**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

IDA STEWART,

       Plaintiff,

   v.

COUNTY OF SALEM,

       Defendant.

1:15-cv-01653-NLH-AMD

**OPINION**

**APPEARANCES**:

SARAH F. MEIL
4839 WALTON AVE.
PHILADELPHIA, PA 19143
    On behalf of Plaintiff

MICHAEL MORRIS MULLIGAN
94 MARKET STREET
317 SALEM
CARNEY'S POINT, NJ 08069
    On behalf of Defendant

**HILLMAN, District Judge**

Presently before the Court is the motion of Defendant for summary judgment on Plaintiff's disability discrimination claims. For the reasons expressed below, Defendant's motion will be denied.

**BACKGROUND**

In November 2000, Plaintiff Ida Stewart began working for Defendant Salem County as a Corrections Officer. In May 2007, Plaintiff was involved in an automobile accident and suffered a broken neck and sternum and shattered her right ankle. Plaintiff's ankle was reconstructed using pins, rods and plates.

In February 2008, Plaintiff returned to work with medical restrictions. Plaintiff's doctor ordered that she was not permitted to work more than a 12-hour shift, she could not wear a stab-proof vest, have contact with inmates, or climb stairs. By the end of 2009, Plaintiff's doctor removed her restrictions except for the restrictions that she could not climb stairs or work more than a 12-hour shift. These restrictions lasted through May 2013.

During the five years following Plaintiff's accident, the County and Plaintiff met annually for an "accommodation meeting." Based on medical documentation, the County accommodated Plaintiff's restrictions by assigning her primarily to work in Central Control, which was an area that did not require step climbing or interaction with inmates. She also worked in the kitchen, disciplinary unit, booking, infirmary, and female unit, positions that did not require regular stair climbing but did require contact with inmates. Also during this time, Plaintiff was advised by her doctor that her ankle would never improve beyond its current status.

In March 2013, the County advised Plaintiff that she was required to provide medical documentation substantiating her need for ongoing accommodations. In April 2013, Plaintiff was evaluated as part of a Functional Capacity Evaluation (FCE). The doctor, Minh Huynh, D.O., who reviewed the FCE results, determined

that Plaintiff was able to climb stairs for "up to 1/3 of the

day."  Based on a job description prepared by the Warden, Raymond

Skradzinski, Dr. Huynh opined that Plaintiff could not perform the

essential elements of her job because a corrections officer is

required to "frequently" climb stairs, but Plaintiff was only able

to "occasionally" climb stairs.

In May 2013, the County issued a "Preliminary Notice of

Disciplinary Action," which provided:

> Subject has been on restricted duty status for several years
> as a result from injuries sustained in an off duty auto
> accident, on or about May 3, 2007.  Specific limitations
> requested by her physician upon her return to work included
> 1) no inmate contact 2) no stairs 3) no overtime 4) desk work
> only.  These accommodations were approved based on the
> Officer's potential for recovery.  On April 18, 2013, an
> occupational functionality assessment was performed on CO
> Stewart and the results confirmed that the permanent injuries
> to her ankle leave the Officer incapable of performing the
> essential functions of job.

(Docket No. 30-1 at 24.)

Immediately after receiving the Notice, Plaintiff went on

FMLA leave for anxiety and mood swings.  She returned to work on

June 6, 2013.  On August 16, 2013, in an agreement with the

County, Plaintiff went on unpaid leave pending the determination

of her disability pension application.  Plaintiff filed her

application on September 17, 2013, with a requested retirement

date of October 1, 2013.

By March 2014, Plaintiff had been without pay and benefits

for six months, she has not been permitted to apply for any other

positions with the Salem County jail, and she still had not received a decision on her disability pension application.  On March 13, 2014, Plaintiff submitted a letter of resignation to the County so that she could accept another job.

On February 23, 2015, the Division of Pensions and Benefits notified Plaintiff that her disability pension application was denied.  Even though Plaintiff was precluded from applying for other jobs during the pendency of her application, and she did not submit her letter of resignation until March 13, 2014, Plaintiff's pension application was denied because the Division considered Plaintiff to have been separated from employment as of August 2013.[1]

On August 4, 2014, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC).  On February 24, 2015, the EEOC issued Plaintiff a Notice of Right to Sue.  On March 5, 2015, Plaintiff filed a six-count complaint against the County, alleging that the County violated the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. § 10:5-1 et seq., and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111 et seq., by wrongfully terminating her, failing to accommodate her, and constructively discharging her based on her

---

[1] The Division informed Plaintiff that her employer must send contributions from August 1, 2013 through March 2014 and a letter proving that she was on official leave until March 20, 2014 in order to be considered a County employee as of March 2014.

4

disability.

The County has moved for summary judgment in its favor on all
of Plaintiff's claims, arguing that Plaintiff does not suffer from
a disability as defined by the NJLAD and ADA.  The County also
argues that even if Plaintiff suffers from a disability, the
County provided reasonable accommodations for her disability, but
when it was determined that Plaintiff was unable to perform the
essential elements of her job – primarily relating to the
requirement that she climb stairs "frequently" – the County was
under no obligation to continue its accommodations and maintain
Plaintiff as an employee.

Plaintiff has opposed the County's motion, arguing that
material disputed facts preclude the entry of summary judgment as
to any of her claims.  Plaintiff contends that she suffers from a
disability covered by the NJLAD and the ADA.  Plaintiff also
argues that the corrections officer position only requires
"occasional" stair climbing, which she is capable of performing.
Plaintiff rejects Warden Skradzinski's job description that
mandates "frequent" stair climbing for the CO position, or the
County's argument that her assignment to Central Control and other
"occasional" stair climbing duty stations on a permanent basis
would be an unreasonable accommodation.  Plaintiff further argues
that she was precluded from applying for any other vacancies in
Salem County because all vacancies required no medical

5

restrictions, and her permanent disability deemed her medically restricted.  Plaintiff maintains that the County admitted that it was terminating her because of her disability, even though she could perform the essential elements of the CO position, and that her resignation letter served only to allow her to obtain other employment since it was clear that she was considered terminated as of August 2013.

## DISCUSSION

### A.    Subject matter jurisdiction

The Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. § 1331 because Plaintiff brings claims arising under federal law.  The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

### B.    Summary judgment standard

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such

that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

C.  **Analysis**

Disability discrimination claims under the ADA and the NJLAD

7

are analyzed under the same framework. Guarneri v. Buckeye Pipe
Line Services Co., --- F. Supp. 3d ---, 2016 WL 4680152, at *7
(D.N.J. Sept. 7, 2016) (citing Joseph v. New Jersey Transit Rail
Operations Inc., 586 Fed. Appx. 890, 892 (3d Cir. 2014) (citing
Victor v. State, 203 N.J. 383, 4 A.3d 126, 145 (2010)) (other
citations omitted).  To state a prima facie cause of action for
disability discrimination, the employee must show the following:
(1) the employee was disabled;[2] (2) she is otherwise qualified to
perform the essential functions of the job, with or without
reasonable accommodations by the employer; and (3) she has
suffered an otherwise adverse employment decision as a result of
discrimination.  Id.  Disability discrimination encompasses not
only adverse actions motivated by prejudice and fear of
disabilities, but also includes failing to make reasonable
accommodations for a plaintiff's disabilities.  Taylor v.
Phoenixville School Dist., 184 F.3d 296, 305-06 (3d Cir. 1999)
(discussing ADA); Gavin v. Haworth, Inc., 2016 WL 7325474, at *6
(D.N.J. 2016) (discussing NJLAD).

    Plaintiff's claims can be split into two different tracks
regarding the County's alleged violation of Plaintiff's rights

---

[2] The NJLAD refers to "handicap," but defines handicap as a
disability.  Foster v. National Gypsum Services Company, 2016 WL
4257772, at *4 n.5 (D.N.J. August 11, 2016) (citing Victor v.
State, 4 A.3d 126, 135 (N.J. 2010) (explaining that courts have
used the terms interchangeably).

under the ADA and NJLAD.  The first track is Plaintiff's claims that she suffers from a disability recognized under the ADA and NJLAD, and the County impermissibly terminated her employment because it refused to afford her available and reasonable accommodations for her disability.  The second track is Plaintiff's claims that she is disabled, her disability did not make her incapable of performing the essential elements of her CO position, but the County terminated her because it believed that she could not perform the essential elements of the CO position.  Thus, the starting point for analyzing Plaintiff's claims is to determine whether she suffers from a disability protected by the ADA and NJLAD.

### 1.    Whether Plaintiff is disabled

Under the ADA, "disability" means "a physical or mental impairment that substantially limits one or more major life activities," having "a record of such an impairment," or "being regarded as having such an impairment."  42 U.S.C. § 12102(1).  "Major life activities" include walking and standing.  Id. § 12102(2)(A).  The disability must "limit[ ] the ability of an individual to perform a major life activity as compared to most people in the general population."  Id. § 1630.2(j)(1)(ii).

The NJLAD defines "disability" as physical disability, infirmity, malformation or disfigurement which is caused by bodily injury . . . which shall include, but not be limited to, . . .

9

lack of physical coordination, . . . resulting from anatomical . .
. physiological . . . conditions which prevents the normal
exercise of any bodily . . . functions or is demonstrable,
medically  . . . by accepted clinical or laboratory diagnostic
techniques. . . ."  N.J.S.A. 10:5-5(q).

What constitutes a disability must be construed broadly under
both the ADA and NJLAD.  29 C.F.R. § 1630.2(j)(1)(i)
("Substantially limits" "shall be construed broadly in favor of
expansive coverage" and "is not meant to be a demanding
standard."); Viscik v. Fowler Equipment Co., 800 A.2d 826, 835
(N.J. 2002) ("The term 'handicapped' in LAD is not restricted to
'severe' or 'immutable' disabilities and has been interpreted as
significantly broader than the analogous provision of the
Americans with Disabilities Act."); cf. Kieffer v. CPR Restoration
& Cleaning Service, LLC, --- F. Supp. 3d ---, 2016 WL 4119842, at
*8 n.9 (E.D. Pa. 2016) (explaining that Congress substantially
modified the ADA in 2008 via the ADA Amendments Act ("ADAAA"), and
the ADAAA lowered the standard for finding a disability under the
ADA).

The County argues that Plaintiff does not suffer from a
disability under the ADA or NJLAD because despite the injury to
her ankle, she can still walk up to 2/3 of the day, stand for 1/3
of the day, and climb stairs up to 1/3 of the day.  The County's
argument for why Plaintiff is not disabled proves the exact

opposite.[3]  The County does not dispute that Plaintiff's ankle injury prevents her from walking 1/3 of the day, standing for 2/3 of the day, and climbing stairs 2/3 of the day.  These restrictions on Plaintiff's major life activities and the normal exercise of her body readily meet the definition of "disabled" under the ADA and NJLAD.

**2.   Whether Plaintiff was otherwise qualified to perform the essential functions of the CO job, with or without reasonable accommodations by the County**

Having determined that Plaintiff suffers from a disability, Plaintiff must show that despite her disability, Plaintiff could perform the essential functions of the CO job with reasonable accommodations by the County - Plaintiff's "first track" claim. For Plaintiff's "second track" claim, Plaintiff must show that despite her disability, she was otherwise qualified to perform the essential functions of the CO job.  The County's stance that the CO job requires "frequent" stair climbing, in contrast to Plaintiff's position is that the CO job only requires "occasional" stair climbing, is the key dispute that affects the viability of all of Plaintiff's claims.

Under the ADA, an employer discriminates against a qualified individual with a disability when the employer does "not mak[e] reasonable accommodations to the known physical or mental

---

[3] It is also undisputed that the County considered Plaintiff to suffer from a disability during the five years it provided accommodations to Plaintiff for that disability.

11

limitations of the individual unless the [employer] can
demonstrate that the accommodation would impose an undue hardship
on the operation of the business of the [employer]." Taylor, 184
F.3d at 305-06 (quoting 42 U.S.C. § 12112(b)(5)(A).  Similarly,
under the NJLAD, an employer must "make a reasonable accommodation
to the limitations of an employee [] who is a person with a
disability, unless the employer can demonstrate that the
accommodation would impose an undue hardship." Gavin, 2016 WL
7325474 at *8 (D.N.J. 2016) (citing N.J. Admin. Code. Tit. 13, §
13-2.5; Fitzgerald v. Shore Memorial Hosp., 92 F. Supp. 3d 214,
237 (D.N.J. 2015)).

The County argues that "frequent" stair climbing – i.e., more
than 2/3 of a shift – is an essential function of the CO job.
Even though the County accommodated Plaintiff's inability to climb
stairs, among other restrictions, for over five years, those
accommodations were provided to Plaintiff under the impression
that they were temporary.  Because Plaintiff's restriction on
climbing stairs below the 2/3-a-shift requirement became
permanent, the County determined that Plaintiff was no longer
qualified for her position without accommodations.  The County
further determined that the accommodations it had been providing
to Plaintiff would become an "undue hardship" if they were
permanent, because Plaintiff's assignment to Central Control
prevented shift rotations of other COs into that assignment, which

had been a long-standing practice to afford relief to the officers and ensure good operating practices.

Plaintiff rejects the County's reasoning for its decision to discontinue accommodations and terminate her. Plaintiff argues that ample evidence – including Warden Skradzinski's testimony and the mathematical reality of the stair-climbing requirement – demonstrates the CO day shift only requires occasional use of the stairs, i.e., going up and down one flight of stairs four times in a 12-hour day shift, and the FCE report proves that she is capable of that requirement. Plaintiff also points out that the State Department of Personnel Job Description for a Corrections Officer does not include stair climbing as a requirement of the position. Plaintiff further contends that the job description drafted by Warden Skradzinski specifically for Dr. Huynh in his review of Plaintiff's FCE is not credible, as it is not based on any official job description of what constitutes the essential functions of the CO job.

As for the County's refusal to provide Plaintiff with accommodations, Plaintiff contends that her request to be assigned to units that do not require stairs, such as Central Control, kitchen, disciplinary unit, lobby, booking, infirmary and female unit, was reasonable because many COs worked at specific posts for long periods of time, and there were other COs who could work in the housing unit, which required climbing stairs. Plaintiff also

points out that she received positive reviews and praise during her tenure in Central Control.  Further, Plaintiff argues that the County has not articulated any true "undue hardship" over her request to be assigned to other various units, or her attempt to obtain other positions that did not require stair climbing.

"'Whether a particular function is essential is a factual determination that must be made on a case by case basis.'" Skerski v. Time Warner Cable Co., a Div. of Time Warner Entertainment Co., L.P., 257 F.3d 273, 279 (3d Cir. 2001)(quoting EEOC Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. pt. 1630, App. 1630.2(n) (2000)).  "Essential functions" is defined as:

> (1) In general.  The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires. The term "essential functions" does not include the marginal functions of the position.
>
> 2) A job function may be considered essential for any of several reasons, including but not limited to the following:
>
> (i) The function may be essential because the reason the position exists is to perform that function;
> (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or
> (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.
>
> (3) Evidence of whether a particular function is essential includes, but is not limited to:
>
> (i) The employer's judgment as to which functions are essential;

14

        (ii) Written job descriptions prepared before advertising or
interviewing applicants for the job;
        (iii) The amount of time spent on the job performing the
function;
        (iv) The consequences of not requiring the incumbent to
perform the function;
        (v) The terms of a collective bargaining agreement;
        (vi) The work experience of past incumbents in the job;
and/or
        (vii) The current work experience of incumbents in similar
jobs.

29 C.F.R. § 1630.2(n).

      When considering these factors with the parties' arguments
and proof in support of those arguments, Plaintiff has provided
sufficient material disputed facts to withstand the County's
motion for summary judgment on the issue of whether Plaintiff was
qualified to perform the essential functions of the CO job without
any accommodations.  Assessing Plaintiff's proofs in the light
most favorable to her, a reasonable jury could find the County's
argument that "frequent" stair climbing is an essential function
of the CO position is not credible.  Compare Skerski, 257 F.3d 273
at 283 (finding that a genuine issue of material fact existed as
to whether climbing was an essential function of the job of
installer technician at Time Warner, because even though "the
employer's judgment and the written job descriptions may warrant
some deference, Skerski has put forth considerable evidence that
contradicts Time Warner's assertions, particularly the
uncontradicted fact that following his 1993 diagnosis [of an
anxiety disorder that precluded his working at heights] he worked

for more than three years as an installer technician for Time
Warner without ever having to perform overhead work. Moreover,
certain evidence suggests that during these three-plus years
Skerski received repeated commendations for his work and never
received any complaints from supervisors or co-workers . . . ."),
with Raspa v. Office of Sheriff of County of Gloucester, 924 A.2d
435, 444 (N.J. 2007) (citations and quotation omitted) ("Plaintiff
admitted that he knew that NJDOP's description of the position of
county corrections officer was controlling and that having contact
with inmates was an essential function of the job.  He also
conceded that, given the medical limitations placed on him, he
simply was unable to perform any of the essential functions that
involved contact with inmates.  Further, the proofs demonstrated
that no objectively viable and reasonable accommodation would ever
make plaintiff qualified to perform the functions he admitted were
essential to the position of a county corrections officer. The
conclusion to which those admissions, concessions and proofs lead
is inescapable: . . . Because it has  been clearly shown that
plaintiff's disability would prevent him from performing that]
particular job, plaintiff, as a matter of law, was not qualified
as a 'county corrections officer.'").

     Similarly, Plaintiff has set forth sufficient material
disputed facts with regard to the issue of whether Plaintiff was
capable of performing the CO position with accommodations, and

16

whether those requested accommodations were reasonable or caused the County undue hardship.  According to the ADA, a "reasonable accommodation" includes: job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.  42 U.S.C. § 12111(9)(B).  The relevant regulations define reasonable accommodations as "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(*o*) (1)(ii).

"On the issue of reasonable accommodation, the plaintiff bears only the burden of identifying an accommodation, the costs of which, facially, do not clearly exceed its benefits." Skerski, 257 F.3d at 284 (quotations and citation omitted). Summary judgment may be granted for a defendant only "in cases in which the plaintiff's proposal is either clearly ineffective or outlandishly costly." Id. (quotation and citation omitted).  If the plaintiff satisfies his or her burden, the defendant then has the burden to demonstrate that the proposed accommodation creates an "undue hardship" for it. Id. (citing 42 U.S.C. §

17

12112(b)(5)(A)).  The ADA defines "undue hardship" as "an action requiring significant difficulty or expense, when considered in light of [a series of factors]."  42 U.S.C. § 12111(10)(A). Among the factors to be considered are "the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility."  42 U.S.C. § 12111(10)(B).

Whether the County was incapable of accommodating Plaintiff's disability of being unable to climb stairs for more than 1/3 of a 12-hour shift is a dispute that a jury must resolve.[4]  Disputed facts remain for a jury to decide whether Plaintiff's requested accommodations were reasonable, and if so, whether the County would have suffered undue hardship if it had provided Plaintiff with those accommodations.[5]  Compare Skerski, 257 F.3d at 286

_____

[4] It is undisputed that Plaintiff was terminated because of her disability.  Accordingly, this "direct evidence" case does not apply the burden-shifting analysis of McDonnell Douglas that is used in cases involving circumstantial evidence to prove that an employer's termination of an employee was discriminatory rather than a result of a legitimate business decision.  See, e.g., A.D.P. v. ExxonMobil Research and Engineering Co., 54 A.3d 813, 821–22 (N.J. Super. App. Div. 2012) (explaining that in the less common case in which there is direct evidence of discrimination, the McDonnell Douglas analysis does not apply) (citing Healey v. Southwood Psychiatric Hosp., 78 F.3d 128, 131 (3d Cir. 1996) (finding error in District Court's application of McDonnell Douglas to case involving facially discriminatory policy); Snyder v. Norfolk S. Ry., Corp., 463 F. Supp. 2d 528, 534 (E.D. Pa. 2006), aff'd, 271 F. App'x 150 (3d Cir. 2008) (finding  McDonnell Douglas inapplicable because plaintiff presented a case of direct discrimination).

[5] As the Third Circuit noted in Skerski, the fact that the County previously permitted Plaintiff to work without climbing stairs for five years is relevant to whether stair climbing is an essential

(citation omitted) ("If the jury were to find that the bucket truck [as requested by Skerski] was a reasonable accommodation, the reassignment to the warehouse position did not satisfy the requirements of the ADA.  We therefore find that there is a genuine issue of material fact as to whether Time Warner provided Skerski with a reasonable accommodation, thereby making summary judgment inappropriate."); id. at 285 ("Time Warner's defense in this case has been, in essence, that it would have been 'inconvenient' for it to make the adjustments needed to retain Skerski in the position that he previously had.  However, the ADA was enacted to compel employers to look deeper and more creatively into the various possibilities suggested by an employee with a disability. As is evident from the section on reasonable accommodation in the House Report to the Act, to which the Senate receded, it is only when the accommodation suggested would constitute an undue hardship that the employer can justify failure to accommodate in that manner."), with Raspa, 924 A.2d at 444 (finding that plaintiff's admissions, concessions and proofs led to the "inescapable conclusion" that plaintiff's asserted accommodation - providing plaintiff an indefinite light duty

_____

to the CO job, but it is not relevant to whether her disability can be accommodated.  Skerski, 257 F.3d at 286 n.4.  "This is because employers are not required to accommodate an employee by removing an essential function or restructuring a job so as to avoid it, but, rather, they are to provide an accommodation so as to enable the employee to perform such a function." Id. (citing EEOC Interpretive Guidance, 29 C.F.R. pt. 1630, App. 1630.2(o)).

posting with no inmate contact - was not reasonable under the NJLAD).

### 3. Whether Plaintiff suffered from an adverse employment action

The third element of Plaintiff's discrimination claims is whether she suffered an adverse employment action.[6] The County argues that Plaintiff did not suffer an adverse employment action because she resigned rather than was terminated. The Court rejects the County's position because Plaintiff's adverse employment action occurred eight months prior to her resignation.

In August 2013, in lieu of formal removal proceedings pursuant to the May 2013 "Preliminary Notice of Disciplinary Action," Plaintiff was placed on leave, without pay, benefits, or the ability to apply for other positions, pending the outcome of her disability pension application. Moreover, on August 12, 2013, Warden Skradzinski, Human Resources, and the appropriate

---

[6] The Supreme Court of New Jersey observed that the NJLAD's "purposes suggest that we chart a course to permit plaintiffs to proceed against employers who have failed to reasonably accommodate their disabilities or who have failed to engage in an interactive process even if they can point to no adverse employment consequence that resulted." Victor v. State, 4 A.3d 126, 148 (N.J. 2010). The court did not resolve that issue because the record before the court was "a poor vehicle in which to find the definitive answer to that important question." Id. This Court also does not need to answer the question because it is clear that Plaintiff suffered from an adverse action. See id. (explaining that cases involving a failure to accommodate unaccompanied by an adverse employment "would be unusual, if not rare, for it will ordinarily be true that a disabled employee who has been unsuccessful in securing an accommodation will indeed suffer an adverse employment consequence").

Freeholders signed a "Personnel Action Request," with the requested action being Plaintiff's "separation," with the effective date of August 16, 2013.  Indeed, it was this date of separation that resulted in the denial of Plaintiff's disability pension application.  Clearly these actions can be considered adverse, separate and distinct from Plaintiff's resignation letter in March 2014, which she argues she was forced to write so that she could accept other employment to obtain income and benefits. See Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."); Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001) (explaining that an adverse employment action is one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment).

## CONCLUSION

In her efforts to prevail on her disability discrimination claims against the County, Plaintiff has shown that she is disabled under the ADA and NJLAD, and that she suffered an adverse employment action.  For the final element of proving her disability discrimination claims, Plaintiff has presented sufficient disputed issues of material fact for a jury to

21

determine whether she was otherwise qualified to perform the essential functions of the CO position, either with or without accommodations.  Accordingly, the County's motion for summary judgment in its favor must be denied.  An appropriate Order will be entered.


Date: __March 31, 2017__          ____s/NLH_____
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.